JOHN A. CHURCHILL, Appellee, v. GRONEWIG & SCHOENTGEN, Appellants.

81   449
116   371
81   449
128   36

1   Landlord and Tenant: LEASE : CANCELLATION : EVIDENCE.   The agreement of a landlord to release a tenant from further obligation under a lease of premises, provided another tenant can be secured therefor, and his agreement to see a person named whom the tenant claimed would rent the same, will not operate as a release of the lessee from his obligation under said lease if another tenant is not in fact secured upon terms agreeable to the lessor.

2.   ——— : ——— : ——— : INSTRUCTIONS TO JURY.   When the instructions of a court to the jury correctly present the propositions of law applicable to the questions at issue, a party who has not asked that the jury be more fully instructed cannot complain upon appeal that more elaborate instructions were not given.

3.   ——— : ——— : ——— : ———.   The defendants pleaded an estoppel to plaintiff's claim for rent based upon an agreement alleged to have been made prior to their vacation of the leased premises, and introduced evidence of statements made by plaintiff on the basis of such agreement, and tending to prove an estoppel.   *Held*, that as the jury must have found that the alleged agreement was not in fact made, an instruction withdrawing the issue of an estoppel from the jury was not erroneous.

*Appeal from Pottawattamie District Court.*—HON. H. E. DEEMER, Judge.

MONDAY, OCTOBER 27, 1890.

IN December, 1879, John Beno and these defendants entered into a contract, whereby the former leased to the latter certain premises for the term commencing November 1, 1879, and ending November 1, 1886, at the agreed rental of one hundred and eight dollars and sixty-six cents per month.   On the fifth of October,

1883, Beno assigned the lease to Sallie A. McMahon, who, on the tenth of March, 1885, assigned it to George F. Wright, and on the twenty-seventh of October, 1885, he assigned it to plaintiff. Plaintiff brought suit to recover rent for the months of February, March, April, May, June, July, August, September and October, 1886. Defendants answered: *First*. That by a parol agreement entered into prior to October, 1885, between them and Wright and McMahon, the lease was canceled, and that they had surrendered possession of the premises under such agreement; and, *second*, that after the lease was assigned to plaintiff he was advised by defendants of such agreement to cancel the lease and surrender the premises, and that he assented thereto, and agreed that he would claim nothing from them under the lease, and that, relying on that promise, they had vacated the property and removed their business to other premises, which they rented in reliance thereon, and that he thereby waived all claim under the same. These issues were tried to a jury, who found for plaintiff, and the court entered judgment on the verdict, from which defendants appeal.

*Wright, Baldwin & Haldane*, for appellants.

*Burke & Hewett*, for appellee.

GRANGER, J.—I. Appellants urge that the undisputed evidence shows that there was such an agreement made between defendants and Wright and Mrs. McMahon, as to release defendants from further obligations for rent. In this respect appellants are certainly in error, and the error arises from unwarranted conclusions from some statements in the testimony. At the time the release was sought, Mr. Wright was the owner of the lease, and he declined to release defendants except with the consent of Mrs. McMahon, and he was to, and did, see her, and she agreed to release defendants *provided another tenant was obtained in their stead*. No tenant

was ever obtained.   It is then urged that, because of
certain statements by Mr. Wright and by Jesse
McMahon, as agent for his mother, the defendants were
absolutely released.   Appellants say, as to the release,
that Mr. Wright saw Jesse, and he ( Jesse ) agreed that
defendant could vacate the property, and he would find
a tenant, and that Wright told defendants of the agree-
ment, and that he was released.   It is the testimony of
Mr. Wright that is relied on in this respect, and we
quote it below.   Mrs. McMahon had agreed to release
defendants if they ( defendants ) would procure other
tenants on like terms, as she would not make repairs
which defendants thought necessary.   Mr. Wright
informed defendants of this, and Mr. Schoentgen
informed Mr. Wright that Cooper & McGee might be
secured as renters, and desired him to see them.   He
declined, but agreed to see Jesse, and have him attend
to it.   And the witness says :   "I went up to Jesse's
office and told him Schoentgen had come in, and
claimed that Cooper & McGee would take this building,
and rent it for a term of years, and I said :   'Now,
Jesse, do you want me to look after this, or will you
look after it yourself ?'   He says :   'I will attend to it
myself.'   'Very well,' I says, 'I won't do anything
more about it.'   'No,' he says, 'you need not.   I have
got the time, and I will go and see Mr. Cooper about it.'
I saw him.   I think this was in the morning, and the
same day, or the next morning, I saw him, and he said
that he had been around to see Cooper, but didn't see
him, but would see him right away.   I said : 'Jesse,
now you should attend to this, for it is important that
you get this tenant.'   He said he would do so.   Very
soon after Mr. Schoentgen came back, and, he says,
wanted to know what had been done, and I told him
just the conversation I had had with Jesse, and I says
to him :   'Of course, I have not anything further to do
with it than I have done,' and he said he would attend
to it and see them ; and he says . 'Well, then, I need
not do anything more about it.   He says, that would

release us.' And I made some remark that it looked that way, or something of that kind, and that ended the conversation."

Appellants urge that from the testimony they could properly understand that they were released. To our minds, no such conclusion is properly deducible. There is nothing in the testimony indicating that Jesse McMahon agreed to do more than see Cooper & McGee and secure them as renters if he could. Mr. Wright says he told Schoentgen just the conversation he had with Jesse. Schoentgen says: "That would release us." What would release them? Evidently, if Jesse secured Cooper & McGee as renters. There had been no talk of a release except renters were secured, and Wright was asking Jesse to do what Schoentgen wanted Wright to do,—see Cooper & McGee,—not to engage positively to secure them. The appellants say that Schoentgen testified that Wright agreed positively that the lease should be terminated. That he so testified is true, but in that he is contradicted, and in such a case we are to take that view of the evidence that will sustain the verdict. But, more than this, appellants well knew, when Wright told Schoentgen of what Jesse said, that Cooper & McGee would not accept the building without repairs, and also knew that they would not be released on such conditions. Cooper had told appellants their terms, and, at that time, appellants were the only parties knowing them. We think the verdict of the jury is fully sustained by the evidence.

II. Complaint is made as to the instructions 3, 4 and 5 given by the court. Appellants concede them to be correct as abstract propositions, but the claim is that they are not applicable "to the theory that plaintiff's claim was established by the proof." The instructions were pertinent to the issues, and called the attention of the jury to the facts sought to be established by the evidence ; and correctly state the law as applicable to the facts when found. The complaint is that, by the instructions, to entitle defendants to a verdict, they must prove an

2. ——: ——.
——: instruc-
tions to jury.

absolute consent by Mr. Wright to the release, and that, as we understand it, the jury could not infer it from his conduct and statements. Nothing in the instructions in any manner indicated to the jury that the conduct and statements could not be considered in finding the real understanding of the parties as to the release, and, if appellants desired a more elaborate rule, it should have been asked. *Deere v. Wolfe,* 77 Iowa, 115. See, especially, *Gwinn v. Crawford,* 42 Iowa, 63.

III. The second division of the answer is in part a plea of estoppel, and the court, as applicable thereto, 3. THE same. gave the following: "8. There is not sufficient evidence to support the defendants' plea of estoppel in this case, and you need give it no further consideration; but should you find under the rules above given you that, after plaintiff received an assignment of the lease in question, the defendants surrendered the premises to him; that plaintiff accepted the same, and released defendants from the payment of rent, after January 1, 1886, then plaintiff cannot recover." Appellants urge that there is testimony on which the question should have been submitted, and refer to the testimony of the defendants. It will be noticed that the defense rests upon a transaction between the plaintiff after assignment to him and defendants. The testimony relied upon is that the plaintiff came with the lease for his rent, and the defendants told him they had been "released by Mr. Wright" from the contract, and the plaintiff said: "Oh, well, that don't .make much difference. That's all right, but I can, for what I have got in the lease, soon find a tenant that will take it until I get my money out of it." The jury under other instructions must have found that there was no release by Mr. Wright, and, hence, there could have been no finding for defendants on that issue if it had been submitted. If there was a release to serve as a basis for the estoppel or waiver, it must serve as a basis for a recovery under the other division of the answer; for, under that division, it was only necessary for defendants to show the

release to entitle them to a verdict.    No prejudice could have resulted from withdrawing the question from the jury.

Complaint is also made as to the remainder of the same instruction on the ground that, in effect, it required the defendants to prove an agreement with plaintiff for their release, and it is said in argument that they did not plead a contract.    But let us test the question by quoting from appellants' argument: "Defendants did not plead a contract for the termination of the lease with plaintiff.    What they did plead was that plaintiff was informed of the contract with Wright and McMahon for its cancellation, and that he assented to it, and promised that he would make no claim for rent after the termination of the lease, as provided in that agreement, and that they relied upon that promise when they surrendered possession; and their proof was directed to that claim." With appellants' statement as to what they pleaded, is there less than a contract set forth?  Plaintiff, being informed of certain facts constituting an agreement of Wright with Mrs. McMahon to release defendants, assented to it, and promised that he would make no claim for rent.  And defendants relied upon the promise and surrendered possession of the premises. Plaintiff has assented to a former contract of release, and promised not to do a particular thing; and defendants seek the enforcement of the promise.    We think that is pleading a contract.    A contract is an agreement between parties for the doing or not doing of some particular thing.    1 Pars. on Cont. 6.    The district court seems to have taken that view in its instructions, and its judgment should be AFFIRMED.